**Tara Herivel,** OSB No. 070418
Tara@heriveldefense.com
Law Firm of Tara Herivel, LLC
333 S.W. Taylor St., Suite 300
Portland, Oregon 97204
Tel: (503) 893-5525

**Caitlin V. Mitchell**, OSB No. 123964
cmitchell@justicelawyers.com
**Jennifer J. Middleton**, OSB No. 071510
jmiddleton@justicelawyers.com
JOHNSON JOHNSON LUCAS & MIDDLETON PC
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: 541-484-2434
Fax: 541-484-0882
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **TONI REIGN ROBERTS (AKA TARA REIGN WITHROW),**<br><br>                              Plaintiff,<br><br>v.<br><br>OREGON DEPARTMENT OF CORRECTIONS, an agency of the State of Oregon; HEIDI STEWARD, in her individual capacity; CYNTHIA PORTER, in her individual capacity; JANE and JOHN DOE DEFENDANTS 1-10, in their individual capacities,<br><br>                              Defendants. | Case No.: 6:25-cv-00079<br><br>**COMPLAINT**<br><br>Eighth and Fourteenth Amendments to the United States Constitution; 42 U.S.C. §1983; Negligence.<br><br><br>**DEMAND FOR JURY TRIAL** |

Page 1 - **COMPLAINT**

**Introductory Statement**

1.

Defendants knowingly placed Plaintiff Tara Reign Withrow (fka Toni Reign Roberts), a vulnerable, minimum security, transgender woman, in a maximum-security men's prison, and allowed a known predator (JNC) free access to her in her cell. Defendants allowed JNC to take Plaintiff to secluded, unsupervised areas in the prison, where he and his associate raped Plaintiff multiple times. When Plaintiff reported the rapes, Defendants transferred the perpetrator to a different prison and continued to give him unrestricted access to transgender women incarcerated there. Plaintiff brings this action under the Eighth and Fourteenth Amendments to the United States Constitution (through 42 U.S.C. § 1983), and Oregon law.

**Jurisdiction & Venue**

2.

This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and over Plaintiff's state claims through supplemental jurisdiction, 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Marion County, Oregon.

**Parties**

3.

Plaintiff Tara Reign Withrow is a transgender woman. The unlawful acts that form the basis for this Complaint occurred when she was incarcerated at Oregon State Penitentiary (OSP), in Marion County, Oregon.

4.

Defendant Oregon Department of Corrections (ODOC) is the Oregon State agency charged with incarcerating adults who are sentenced to more than one year in prison. It runs 12 prisons across Oregon, including OSP.

5.

Defendant Heidi Steward was Acting Director of ODOC in June 2023. She was responsible for ensuring that ODOC complied with the requirements of the United States Constitution and federal and state law, including the Prison Rape Elimination Act. Steward undertook the actions alleged herein under color of state law. She is sued in her personal capacity.

6.

Defendant Captain Cynthia Porter was the compliance manager at OSP and was responsible for responding to reports of sexual harassment and assault in June 2023. She was also responsible for handling matters relating to the transgender female population at OSP. Porter undertook the actions alleged herein under color of state law. She is sued in her personal capacity.

7.

The John and Jane Doe Defendants are correctional officers who were on duty at OSP on June 23, 2023, and June 26, 2023. These individuals allowed JNC to open Plaintiff's cell and take Plaintiff into unsupervised areas of the prison, where JNC and his associate raped Plaintiff. The Doe Defendants include the supervisors of the above-described correctional officers. The Doe Defendants also include ODOC staff who made the decision to transfer Plaintiff to OSP. All Doe Defendants undertook the actions alleged herein under color of law and are sued in their personal capacities. Their identities and the exact nature of their involvement will become known as formal discovery progresses.

Page 3 - **COMPLAINT**

## Facts

8.

In September 2018, Plaintiff Tara Reign Withrow began serving her sentence at Oregon Department of Corrections (ODOC).

9.

During the intake process, Ms. Withrow disclosed to ODOC that she was gay. She also disclosed that, on her first day, other prisoners had already called her "faggot." With these two disclosures, Ms. Withrow put ODOC on notice that she was particularly vulnerable to sexual victimization by other prisoners.

10.

As early as 2019, Ms. Withrow reported to ODOC that she is transgender. She began requesting gender-affirming care: hormone therapy, electrolysis, and surgery that would bring her body into alignment with her internal conception of self.

11.

ODOC told Ms. Withrow that she would need hormone therapy for a year before it would consider whether to authorize electrolysis and surgery. Ms. Withrow began taking hormones and, after a year, renewed her requests to ODOC for electrolysis and surgery. ODOC denied the requests.

12.

In 2019, Ms. Withrow's cellmate at ODOC facility Two Rivers Correctional Institution raped her. Ms. Withrow reported the rape, placing ODOC on further notice of her vulnerability to sexual violence as a transgender woman incarcerated in a men's facility.

13.

Following the rape, ODOC did not provide Ms. Withrow with sexual assault resources or protections, including but not limited to therapy related to the rape and increased safety protections, as required under the Prison Rape Elimination Act (hereafter "PREA"). ODOC did not send Ms. Withrow to the hospital or provide any kind of medical examination or treatment following the rape. ODOC did not protect Ms. Withrow from contact with the assailant. Other prisoners called her a rat, a snitch, and a whore. When Ms. Withrow told ODOC staff about the retaliatory harassment ODOC responded with, "What do you want us to do about it," and, "do you want us to lock you up alone?" If ODOC investigated the report, it never informed Ms. Withrow of the outcome nor did it interview her about the assault, despite the fact that these are mandatory protections and resources required by PREA following prisoner sexual assault.

14.

On May 10, 2021, Ms. Withrow brought a habeas corpus action against Zachary Ackley, the superintendent of Deer River Correctional Institution, where she was incarcerated at the time of filing. *See Tara Rain Withrow v. Zachary Ackley*, Supt., case no. 21CV19228. Constitutional claims included deprivation of her right to medically necessary gender-affirming care and treatment and failure to protect her as a transgender woman in a dangerous male prison.

15.

On February 16, 2022, Ms. Withrow entered into a stipulated settlement agreement with ODOC, whereby ODOC agreed to provide Ms. Withrow with gender affirming care and treatment in return for dismissal of her habeas corpus case without prejudice.

16.

Over the next year, ODOC failed to provide gender affirming care as promised pursuant to the stipulated settlement. Plaintiff sought redress from the settlement judge, Multnomah County Circuit Court Judge Benjamin Souede. On April 24, 2023, Judge Souede ordered ODOC to comply with the agreement and to provide gender affirming care, including electrolysis and an orchiectomy with all immediate speed.

17.

Ms. Withrow was incarcerated at Columbia River Correctional Institute (CRCI) in minimum custody at the time Judge Souede issued his order for injunctive relief. Shortly after, ODOC transferred her to Oregon State Penitentiary (OSP), Oregon's maximum-security prison, where people convicted of the most violent crimes are incarcerated. ODOC intentionally effectuated the transfer knowing that Ms. Withrow was a transgender woman who had already been raped, targeted and harassed based on gender while in ODOC custody. ODOC was aware Ms. Withrow was not a maximum-security prisoner and was highly vulnerable to further victimization and violence at OSP.

18.

Soon after she arrived at OSP, Ms. Withrow was introduced to a prisoner named JNC. He was a leader in a gang and was serving a life sentence for murder.

19.

JNC had a lengthy history of disciplinary violations involving unilateral assault of other prisoners, contraband, pornography, possession of weapons, taking part in a coordinated operation to smuggle in burprenorphine and distribute it throughout the prison, stealing from the

prison kitchen and infirmary, disregarding directives, lying to prison staff, entering unauthorized

areas, and extortion.

20.

Upon information and belief, Defendants were also on notice that JNC was sexually

harassing and assaulting transgender prisoners at OSP. Upon information and belief, at least one

other transgender prisoner had reported to Captain Porter that JNC had sexually assaulted her.

21.

Despite full knowledge of JNC's history of violence, dangerous behavior within the

prison, and harassment of other transgender prisoners, Defendants allowed JNC to work in the

prison laundry service, which entailed a high level of responsibility and mobility within the

institution - including the ability to access prisoners' cells.

22.

JNC asked the guards to "pop the doors" to other prisoners' cells, and the guards

routinely complied without question.

23.

Defendants knowingly gave JNC access to the shower area during the specifically

designated shower times for transgender prisoners, when non-transgender prisoners were not

allowed access due to safety concerns.

24.

On or around June 20, 2023, after she had been at OSP for about 3 weeks, Ms. Withrow

saw JNC talking to a sergeant. JNC indicated Ms. Withrow to the sergeant, and said: "Oh, there

she is. She wants to volunteer with laundry and do inventory in the paint shop." Ms. Withrow

was surprised. She had not asked to volunteer. The sergeant looked at Ms. Withrow and, without

asking if she wanted to go with JNC, said it was fine. JNC instructed Ms. Withrow to follow him and said: "We are going on an adventure." Ms. Withrow felt nervous and confused, but she could not safely refuse JNC given his gang affiliation, history of extreme violence, and his apparent authority at the prison, including with staff.

25.

JNC told Ms. Withrow that he was taking her to the prison paint shop. To get there, he had to take Ms. Withrow through a security checkpoint. He gave her a laundry cart to push and indicated that she should follow him. The guards knowingly allowed them to pass into areas of the prison that Ms. Withrow was not authorized to enter.

26.

The guards did not speak to Ms. Withrow. They did not ask her name, what she was doing there, or why she was with JNC. They did not scan her ID (as is normally required to pass through monitored check points in prison) but simply let her through.

27.

At the paint shop, JNC introduced Ms. Withrow to a prisoner known as "the Painter" who, like JNC, was highly involved in gang activity. After a few hours, JNC told Ms. Withrow to return the laundry cart to the laundry unit and go back to her cell.

28.

On approximately June 23, 2023, JNC again sought out Ms. Withrow and instructed her to follow him out of the unit. He told Ms. Withrow he was taking her to an event where prisoners would get a special meal. As before, he told her to push the laundry cart and they proceeded through the check point. The guards did not ask Ms. Withrow who she was or what she was

doing, and they did not require either her or JNC to scan their IDs. JNC talked and laughed with the guards as they allowed him and Ms. Withrow to pass through.

29.

 Back at the paint shop, JNC brought Ms. Withrow to a platform one story up from the closest guard's station. The Painter arrived soon after. The two men had food from the special meal and offered it to Ms. Withrow.

30.

After they had eaten JNC and Painter started whispering in Spanish to each other. Ms. Withrow could hear them say "tits" and "she." Ms. Withrow told them she needed to go back to her tier because it was time for meds. At that moment JNC put his hands up her shirt and inside her bra and grabbed her breasts. Ms. Withrow said "don't do this" and "stop," but he did not stop. There was no way for Ms. Withrow to escape, get help, or defend herself from these men who were physically stronger and had a known history of violence.

31.

JNC and Painter took turns raping Ms. Withrow. Painter forced her to perform oral sex on him. They sodomized her with their penises, placing her over a stool and ripping her anus. The pain was excruciating. When they finally let her go, she ran back to her unit.

32.

Back in her cell Ms. Withrow crawled into her bed and cried in fear, shock, and pain. She knew she could not report JNC to the guards, given JNC's close relationship with them. She was terrified of retaliation from JNC or others affiliated with his gang. The retaliatory harassment she had endured after the first time she reported a rape, and ODOC's failure to do anything about it, only increased her apprehension about making a report.

Page 9 - **COMPLAINT**

33.

On or around June 26, 2023, Ms. Withrow's cell door popped open. She saw that JNC was waiting for her on the platform outside the sergeant's station. He told her, "Let's go." A guard was standing close by and clearly heard and saw this interaction, but did nothing, allowing JNC to lead Ms. Withrow away. Ms. Withrow was terrified. She had no idea what JNC planned to do to her – if he would beat her up, if he had associates waiting to rape or hurt her. Before exiting her cell she quickly left a note a note stating that, if anything happened to her, it was JNC who did it.

34.

JNC took Ms. Withrow to the showers even though it was not a scheduled shower time. When they arrived, there was a guard sitting in the office. JNC spoke to the guard, who allowed JNC and Ms. Withrow to enter the showers. JNC told Ms. Withrow to go ahead of him. Shortly after, he came into the shower area, grabbed her by the arm, and pulled her into another, more secluded area where no one could see them. Terrified, Ms. Withrow saw that the guard had walked away from his post, knowingly leaving her alone with JNC.

35.

JNC turned Ms. Withrow around and pushed her into a large wheel on the wall that controls the shower water. Ms. Withrow had no way to escape. She knew she could not fight JNC. JNC put spit on her anus and sodomized her with his fingers and hand, and then with his penis. He grabbed her so hard he left bruises on her body. As before, the pain was excruciating. When he was done Ms. Withrow ran out of the shower area.

36.

That same day, when Ms. Withrow was in the chow hall, another transgender prisoner approached her and said: "Do you know about the paint shop." She said she had been there. Ms. Withrow began to cry. The other prisoner then said, "He's done it to all of us," and named other transgender women at OSP. She said she knew what had happened to Ms. Withrow because it had happened to her and most of the other girls. She said: "I know you have an attorney. You have to do something, please do something or he will keep doing this to us."

37.

On or around June 27, 2023, Ms. Withrow told her electrologist about the rapes. Defendant Captain Porter was informed and asked Ms. Withrow about the assault. Porter then brought Ms. Withrow to the hospital, where a SANE nurse (sexual assault nurse examiner) examined her. She was later transferred to Columbia River Correctional Institute (CRCI), where she was interviewed by the Oregon State Police.

38.

ODOC never told Ms. Withrow whether it investigated her report of sexual assault. No one from ODOC told her whether JNC was punished. No one from ODOC followed up with Ms. Withrow to offer mental health care, to find out how she was doing, or whether she was being retaliated against.

39.

ODOC has been on notice for decades that transgender prisoners are at elevated risk for sexual assault. ODOC policy, which implements PREA, requires screening for risk of sexual victimization, and explicitly names "Whether the [Adult in Custody] is or is perceived to be lesbian, gay, bisexual, transgender, intersex, or gender nonconforming" as a risk factor.

40.

PREA requires ODOC to take specific steps to keep transgender prisoners safe from sexual violence, including separating them from prisoners who are known to be dangerous. PREA and its implementing standards require, among other things:

   a. A zero-tolerance policy toward all forms of sexual abuse. 28 C.F.R § 115.11;

   b. Adequate staffing and video monitoring to protect prisoners from sexual abuse, taking into consideration components of the facility's physical plant such as "blind-spots" or other areas where prisoners may be isolated. 28 C.F.R § 115.13(a);

   c. Screening prisoners for risk of victimization, including whether they are or are perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming. 28 C.F.R § 115.41 (a)-(d);

   d. Using the information from the risk screening to inform housing, bed, work education, and program assignments with the goal of keeping separate those prisoners at high risk of being sexually victimized from those at high risk of being sexually abusive. 28 C.F.R § 115.42(a);

   e. Giving "serious consideration" to transgender prisoners' own views with respect to their safety. 28 C.F.R § 115.42(e);

   f. Giving transgender prisoners the opportunity to shower separately from other prisoners. 28 C.F.R § 115.42(f);

   g. Employee training to ensure correctional staff compliance with PREA guidelines. 28 C.F.R § 115.31;

   h. PREA education for prisoners during the intake process, within 30 days of intake, and upon transfer to a new facility, through video or in-person. 28 C.F.R § 115.33;

i.   Offering victims of sexual abuse access to a forensic medical examination. 28 C.F.R §
     115.21(c);

j.   Offering victims of sexual abuse access to a victim advocate from a rape crisis center.
     28 C.F.R § 115.21(d);

k.   Referring allegations of sexual abuse to an agency with the legal authority to conduct
     criminal investigations. 28 C.F.R § 115.22;

l.   Providing specialized training to investigators who conduct sexual abuse
     investigations, and maintaining documentation of those trainings. 28 C.F.R § 115.34;

m.   Providing specialized training on sexual abuse and harassment to medical and mental
     health care practitioners who work regularly in ODOC facilities, and maintaining
     documentation of those trainings. 28 C.F.R § 115.35;

n.   Providing a mechanism for prisoners to privately report sexual abuse and harassment,
     retaliation by inmates or staff, and staff neglect or violation of responsibilities that may
     have contributed to such incidents. 28 C.F.R § 115.51(a);

o.   Requiring staff to report immediately any knowledge, suspicion, or information
     regarding an incident of sexual abuse or harassment; retaliation against prisoners who
     report such an incident; and any staff neglect or violation of responsibilities that may
     have contributed. 28 C.F.R § 115.61;

p.   Upon learning that a prisoner is subject to a substantial risk of imminent sexual abuse,
     taking immediate action to protect the prisoner. 28 C.F.R § 115.62;

q.   Protecting prisoners who report sexual abuse from retaliation, including monitoring
     such prisoners for 90 days. 28 C.F.R § 115.67;

r.   Conducting an investigation, as outlined in 28 C.F.R § 115.71;

s.  Providing mental health evaluation and treatment, including follow-up services and continued care. 28 C.F.R § 115.83;

41.

ODOC knew that knew that Ms. Withrow was particularly vulnerable to being sexually victimized. Ms. Withrow first told ODOC that she was gay and that other prisoners were targeting her with homophobic slurs as early as October 2018. She told ODOC that she is transgender soon after. She reported to ODOC she was sexually assaulted by her cellmate in September 2019. She had a sex offense conviction, was a first-time offender, and had a history of sexual victimization, which, in addition to being transgender, meant that she met multiple risk factors for sexual victimization vulnerability, as defined by PREA and ODOC's own policies. Yet despite being fully aware of her vulnerability and of JNC' dangerousness, Defendants knowingly allowed JNC unfettered access to Ms. Withrow and allowed him to take her into secluded areas and rape her repeatedly.

42.

After Ms. Withrow reported the sexual assaults, ODOC moved JNC to Oregon State Correctional Institution (OSCI). Upon information and belief, ODOC put JNC back on laundry duty, and once again permitted him to move freely around the prison and allowed him to pop open the doors of transgender prisoners without their consent.

43.

Ms. Withrow was released from ODOC custody on September 6, 2023. She filed a Tort Claim Notice on December 27, 2023.

**First Claim for Relief**
**U.S. Constitution, 8th Amendment**
**42 U.S.C. § 1983**
**Against Porter, Steward, and Doe Defendants**

Plaintiff repeats and realleges paragraphs 1 through 43 as though fully restated herein.

44.

The 8th Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, guarantees Plaintiff's right to be free from cruel and unusual punishment. Under the 8th Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.

45.

Defendants knew that Plaintiff faced a substantial risk of serious harm including but not limited to sexual assault and disregarded that risk by failing to take reasonable measures to abate it, in ways including but not limited to the following:

(a) Placing Plaintiff, a transgender female who was not maximum security and had previously been raped in custody, in a maximum-security men's facility;

(b)  Allowing JNC, who was known to be dangerous and violent, to access Plaintiff by permitting him to be on her tier when he was not otherwise permitted to be on that tier;

(c) Allowing JNC to take Plaintiff out of her cell block and into unsupervised areas of the prison;

(d) Allowing JNC to enter the shower area during the time designated for transgender prisoners to take their showers;

(e) Allowing JNC to take Plaintiff into the shower area and failing to supervise him when he did so;

(f) Failing to protect Plaintiff from JNC and other assailants;

(g) Failing to adequately investigate Plaintiff's allegations of sexual assault, and failing to take appropriate action to protect other transgender prisoners from JNC;

(h) Failing to train employees and/or enforce rules, policies, processes or procedures meant to ensure that transgender and other vulnerable prisoners are protected from sexual violence;

(i) Failing to investigate, provide required treatment, and protect Plaintiff from further harassment and retaliation following her first sexual assault in ODOC custody;

(j) Failing to ensure that Plaintiff and the men who assaulted her were adequately monitored, whether through staffing or video monitoring;

(k) Failing to adequately screen Plaintiff for her risk of victimization, and/or failing to use the information regarding Plaintiff's risk factors to ensure that Plaintiff would be kept separate from prisoners who posed a risk to her safety;

(l) Knowing of but failing to comply with PREA standards;

(m) Acquiescing in and/or approving of the above acts.

46.

The above-described actions constitute deliberate indifference to Plaintiff's safety and constitutional rights.

47.

Defendants took the above-described actions under color of state law.

48.

As a result of Defendants' unlawful acts, Plaintiff suffered damages in amounts to be determined by a jury at trial. These damages include but are not limited to: Physical injury, pain and suffering, emotional injury, humiliation, and terror.

49.

Defendants showed a reckless and/or callous disregard for Plaintiff's rights. Plaintiff thus seeks punitive damages, in an amount to be proven at trial.

50.

Plaintiff is also entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**Second Claim for Relief**
**U.S. Constitution, 14th Amendment**
**42 U.S.C. § 1983**
**Against Porter, Steward, and Doe Defendants**

Plaintiff repeats and realleges paragraphs 1 through 50 as though fully restated herein.

51.

The 14th Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, enshrines Plaintiff's right to be free from government discrimination based on sex that is not supported by an exceedingly persuasive justification.

52.

Defendants acted with deliberate indifference to Plaintiff's rights under the 14th Amendment when, knowing that Plaintiff was particularly vulnerable to sexual violence because of her gender, they took the following actions:

(a) Placed Plaintiff, a minimum-security transgender female who had previously been raped in custody, in a maximum-security men's facility;

(b) Allowed JNC, who was known to be dangerous and violent, to access Plaintiff by permitting him to be on her tier when he was not otherwise permitted to be on that tier;

(c) Allowed JNC to take Plaintiff out of her cell block and into unsupervised areas of the prison;

(d) Allowed JNC to enter the shower area during the time designated for transgender prisoners to take their showers;

(n) Allowed JNC to take Plaintiff into the shower area and failed to supervise him when he did so;

(e) Failed to protect Plaintiff from JNC and other assailants;

(f) Failed to adequately investigate Plaintiff's allegations of sexual assault, and failed to protect other transgender prisoners from JNC;

(g) Failed to train employees and/or enforce rules, policies, processes or procedures meant to ensure that transgender and other vulnerable prisoners are protected from sexual violence;

(h) Failed to investigate, provide required treatment, and protect Plaintiff from further harassment and retaliation following her first sexual assault in ODOC custody;

(i) Failed to ensure that Plaintiff and the men who assaulted her were adequately monitored, whether through staffing or video monitoring;

(j) Failed to adequately screen Plaintiff for her risk of victimization, and/or failed to use the information regarding Plaintiff's risk factors to ensure that Plaintiff would be kept separate from prisoners who posed a risk to her safety;

(k) Knew of but failed to comply with PREA standards;

(l) Acquiesced in and/or approved of the above acts.

53.

There is no exceedingly persuasive justification for Defendants' discrimination.

54.

Defendants took the above-described actions under color of state law.

55.

As a result of Defendants' unlawful acts, Plaintiff suffered damages in amounts to be determined by a jury at trial. These damages include but are not limited to: Physical injury, pain and suffering, emotional injury, humiliation, and terror.

56.

Defendants showed a reckless and/or callous disregard for Plaintiff's rights. Plaintiff thus seeks punitive damages, in an amount to be proven at trial.

57.

Plaintiff is also entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**Third Claim for Relief**
**Negligence / Negligence per se**
**Against ODOC**

Plaintiff repeats and realleges paragraphs 1 through 43 as though fully restated herein.

58.

ODOC is vicariously liable for acts and omissions of its agents and employees—including the individual Defendants—occurring in the scope of their agency and employment.

59.

A special relationship existed between ODOC and Plaintiff due to the nature of incarceration. Because Plaintiff was in the custody of the State, ODOC managed all aspects of Plaintiff's life, including where she lived, when and where she showered, and who had access to

her physical space. It deprived Plaintiff of normal opportunities for protection. ODOC had a duty to meet Plaintiff's basic needs, including her need for physical safety and protection.

60.

Upon taking custody of Plaintiff, ODOC was required to provide Plaintiff with the statutory rights and protections required by the Prison Rape Elimination Act and its implementing standards, including but not limited to the protections and requirements described in Paragraph 40 of this Complaint.

61.

ODOC also had a duty to prevent JNC – an individual who was known to engage in violent and dangerous behavior – from inflicting bodily harm on others.

62.

ODOC and its employees and agents, including the individual Defendants, were negligent or negligent per se in one or more of the following ways:

(a) Placing Plaintiff, a minimum-security transgender female who had previously been raped in custody, in a maximum-security men's facility;

(b) Allowing JNC, who was known to be dangerous and violent, to access Plaintiff by permitting him to be on her tier when he was not otherwise permitted to be on that tier;

(c) Allowing JNC to take Plaintiff out of her cell block and into unsupervised areas of the prison;

(d) Allowing JNC to enter the shower area during the time designated for transgender prisoners to take their showers;

(o) Allowing JNC to take Plaintiff into the shower area and failing to supervise him when he did so;

Page 20 - **COMPLAINT**

(e)  Failing to investigate prior allegations of sexual harassment and/or assault against JNC;

(f)  Failing to protect Plaintiff from JNC and other assailants;

(g)  Failing to adequately investigate Plaintiff's allegations of sexual assault, and failing to take appropriate corrective action to protect other transgender prisoners from JNC;

(h)  Failing to train employees and/or enforce rules, policies, processes or procedures meant to ensure that transgender and other vulnerable prisoners are protected from sexual violence;

(i)  Failing to investigate, provide required treatment, or protect Plaintiff from further harassment and retaliation following her first sexual assault in ODOC custody;

(j)   Failing to enforce a zero-tolerance policy toward all forms of sexual abuse;

(k)   Failing to ensure that Plaintiff and the men who assaulted her were adequately monitored, whether through staffing or video monitoring;

(l)  Failing to adequately screen Plaintiff for her risk of victimization, and/or failing to use the information regarding Plaintiff's risk factors to ensure that Plaintiff would be kept separate from prisoners who posed a risk to her safety.

(m) Knowing of but failing to comply with PREA standards.

63.

Through the actions and omissions described above, Defendant violated its statutory obligations.

64.

Through the actions and omissions described above, Defendant also failed to exercise reasonable care to prevent dangers apparent or reasonably foreseeable.

65.

ODOC's negligence caused Plaintiff's injury and damage.

66.

As a result of Defendants' unlawful acts, Plaintiff suffered damages in amounts to be determined by a jury at trial. These damages include but are not limited to: Physical injury, pain and suffering, emotional injury, humiliation, and terror.

WHEREFORE, Plaintiff prays for relief as follows:

a.  For judgment in favor of Plaintiff against Defendants;

b.  An award of damages in an amount to be established at trial;

c.  An award of pre- and post-judgment interest;

d.  An award of costs and attorney fees, and

e.  Such other relief as is just and equitable.

Respectfully submitted this 15th day of January, 2025

JOHNSON JOHNSON LUCAS & MIDDLETON PC

s/ Caitlin Mitchell
**Caitlin V. Mitchell,** OSB No. 123964
cmitchell@justicelawyers.com
**Jennifer J. Middleton**, OSB No. 071510
jmiddleton@justicelawyers.com
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: (541) 484-2434  Fax: (541) 484-0882

LAW FIRM OF TARA HERIVEL, LLC
**Tara Herivel,** OSB No. 070418
Tara@heriveldefense.com
333 S.W. Taylor St., Suite 300
Portland, Oregon 97204
Tel: (503) 893-5525
Attorneys for Plaintiff